# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Sandra Laudenbach, o.b.o.  Civ. No. 14-771 (ADM/JJK)
Roger Laudenbach, deceased,

      Plaintiff,

v.  **REPORT AND RECOMMENDATION**

Carolyn Colvin,
Acting Commissioner of Social Security,

      Defendant.

Carol Louise Lewis, Esq., counsel for Plaintiff;

Ana H. Voss, Esq., Assistant United States Attorney, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Sandra Laudenbach seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"), who denied Plaintiff's application for disability insurance benefits.  This matter is before the Court on the parties' cross-motions for summary judgment.  (Doc. Nos. 17, 19.)  This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. L.R. 72.1. For the reasons stated below, this Court recommends that Plaintiff's motion for summary judgment be denied and Defendant's motion for summary judgment be granted.

**BACKGROUND**

**I.    Procedural History**

Plaintiff[1] applied for disability insurance benefits and supplemental security income on March 15, 2011 (Tr. 104) ,[2] with a protective filing date of February 23, 2011.  (Tr. 136.)  He alleged a disability onset date of December 15, 2010 (Tr. 12), asserting disability due to diabetes, arthritis, carpal tunnel syndrome, low back injury, varicose veins, and left leg ulcers.  (Tr. 139.)  The Social Security Administration ("SSA") denied Plaintiff's claim initially on July 7, 2011 (Tr. 12), and on reconsideration on October 23, 2011.  (*Id.*)  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), but Mr. Laudenbach passed away on April 22, 2012. (*Id.*)   Plaintiff's widow, Ms. Sandy Laudenbach, filed a substitution of party on April 24, 2012 and requested that a decision be made on the evidence of record. (Tr. 190.)

Based upon the record and with the additional assistance of vocational expert interrogatory responses (Tr. 193-198), the ALJ, Virginia Kuhn, issued an unfavorable decision on Plaintiff's application. (Tr. 9-22.)  The decision was issued on September 26, 2012.  (Tr. 9.)  Plaintiff sought review of the ALJ's

---

[1]     The disability claimant in this matter, Roger Laudenbach, passed away after he requested a hearing before an ALJ, but before a hearing could be held. His spouse, Sandra Laudenbach, continued the administrative process and commenced this appeal on behalf of her deceased husband.  She is the named Plaintiff in this case.  However, the administrative and medical records in this matter refer to the claimant, Mr. Laudenbach, and therefore, the Court will refer to Mr. Laudenbach as the Plaintiff in this Report and Recommendation.

[2]     Throughout this Report and Recommendation, the Court refers to the Administrative Record (Doc. No. 8) using the abbreviation "Tr."

decision, but the Appeals Council denied the request for review on December 21, 2014. (Tr. 1–5.) Denial by the Appeals Council made the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

In this action Plaintiff seeks remand to the Commissioner for further proceedings. She contends that the ALJ: (1) failed to fully develop the record as to whether Plaintiff's impairments, considered in combination, were medically equivalent to the criteria needed to meet a listed impairment; and (2) failed to correctly weigh the medical evidence, including the opinion of a treating physician, before reaching the residual functional capacity finding. This Court recommends the Plaintiff's motion to remand be denied and Defendant's motion for summary judgment be granted. The ALJ thoroughly evaluated whether Plaintiff's combination of conditions equaled a listed impairment, and there was no requirement in this case that the ALJ consult with a medical expert regarding the issue of medical equivalency. And substantial evidence supported the ALJ's residual functional capacity finding. The ALJ correctly determined that the treating physician's opinion was entitled to little or no weight, and thus he was not required to include the treating physician's limitation in the hypothetical question posed to the vocational expert.

## II.    Statement of Facts

Plaintiff was born on April 25, 1961, and was forty-nine years old on the alleged onset date of disability, December 15, 2010. (Tr. 135.) He was a few days shy of fifty-one years of age when he died on April 22, 2012. He was a high

school graduate and had received post-secondary chef training.  (Tr. 140.)   For more than 15 years prior to the onset date, Plaintiff worked full-time in assembly and general production for a freezer manufacturer.  (Tr. 140, 156-57.)   He had also done some work as a buffet cook and caterer.  (Tr. 158.)

Plaintiff was diagnosed with diabetes on February 21, 2011, upon presenting complaints of significant unintentional weight loss and elevated blood sugar to his treating physician, Dr. Leslie Lofgren.  (Tr. 343.)  Plaintiff was prescribed insulin and was strongly advised to quit smoking.  (Tr. 345.)  Upon receiving treatment, he began feeling much better and his condition improved, including improvement in reported vision problems, as stated in treatment notes on follow-up visits to Dr. Lofgren in March, April, May, and November 2011.  (Tr. 347-60.)  Treatment notes on a March 21, 2012 clinic visit indicated recent elevation in blood sugar level (Tr. 361), but marked decrease in edema and stable varicosities in his lower leg.  (Tr. 363.)  Regular cardiac rhythm, with no murmurs, rubs, or gallops was reported, and no cardiac irregularities were noted. (*Id.*)  A chest x-ray was taken on March 21, 2012, which revealed a small lung module to be monitored, and normal heart size.  (Tr. 366-67.)

Plaintiff died on April 22, 2012.  (Tr. 370.)  An autopsy revealed the cause of Plaintiff's death to be "100% occlusion of the left anterior descending coronary

artery by a coronary artery thrombus at a point 4.0 cm distal to its origin."[3]  (Tr. 374.)

In addition to diabetes, Plaintiff had a somewhat recent medical history that included bilateral knee pain due to osteoarthritis (Tr. 266), edema (ulcerations) on the left ankle (Tr. 218, 231), along with diagnoses of obesity, tobacco use disorder, and varicose veins of the lower extremities.  (Tr. 339-62.)

## III.    ALJ's Findings and Decision--the Five-Step Evaluation

On September 26, 2012, the ALJ issued a decision pursuant to 20 C.F.R. § 404.948(b)(1) and 20 C.F.R. § 416.1448, denying Plaintiff's applications for disability and SSI benefits.  (Tr. 12-22).  In arriving at her decision, the ALJ applied the five-step evaluation process for determining whether an individual is disabled.  *See* 20 C.F.R. § 404.1520(a) and 20 C.F.R. § 416.920(a).

**Steps One and Two.**  At step one, the ALJ determined that Plaintiff was not engaged in substantial gainful activity, *i.e.* activity involving significant physical and mental activity, typically for pay, and he therefore was not precluded from being found disabled on that account. (20 C.F.R. § 404.1520(b) and 20 C.F.R. § 416.920(b)).  (Tr. 14.)  At step two, the ALJ found that Plaintiff had the following severe impairments: diabetes, obesity, degenerative joint disease of the right knee, lumbar degenerative changes, and peripheral venous insufficiency. (Tr. 15.)  Because Plaintiff's leg ulcers had healed prior to the alleged period of

---

[3]    Merriam-Webster defines thrombus as a stationary blood clot along the wall of a blood vessel and remaining attached to its place of origin. www.merriam-webster.com/dictionary/thrombus, January 29, 2015.

disability, and he was not treated for varicose veins or cellulitis during relevant

times, those impairments were not determined to be severe, and caused no more

than mild work limitations.  (*Id.*)  In any event, Plaintiff was not ineligible for

benefits for failing to have a severe impairment.

**Step Three.**  The evaluation at step three requires consideration of

whether the claimant's impairment or combination of impairments equaled the

severity of one of the impairments listed at 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526,  and 20 C.F.R. §§

416.920(d), 416.925, and 416.926).  A determination that a claimant has a listed

impairment means that he will be found disabled without regard to vocational

factors that are the focus of subsequent steps four and five.  The ALJ considered

each of the severe impairments that had been found at step two and concluded

that none of them individually met the specified criteria for a listed impairment in

light of the available medical records and evidence of Plaintiff's functioning

ability.  In particular, with respect to diabetes, the ALJ found no evidence of

certain potential complications from severe hypoglycemia, such as seizures or

loss of consciousness, that would meet a listing.  Similarly, the ALJ determined

that evidence in the record did not establish that any listing was met as a result of

Plaintiff's obesity, in combination with other his impairments.  (Tr. 16.)  The ALJ

correctly noted that Plaintiff's counsel had conceded that the claimant's

impairments did not meet or equal any listed impairment.  (Tr. 15, 103.)

Nonetheless, one of Plaintiff's claims in this appeal is that the ALJ erred by failing

6

to fully and fairly develop the record by consulting with a medical expert to obtain an opinion as to whether the combination of Plaintiff's impairments established a condition medically equivalent to a listed impairment.  This issue will be considered more fully below.

**Steps Four and Five.**  Step four and step five in the process are reached if the claimant is not found to have a listed impairment.  These steps require evaluation of Plaintiff's residual functional capacity ("RFC") to do work, in light of pain and other symptoms and limitations resulting from his physical impairments. These vocational determinations involve consideration of medical records along with evidence of the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medications he may be taking to alleviate pain or other symptoms; other treatment or methods used to relieve pain or other symptoms; and any other pertinent factors concerning functional limitations and restrictions.

Step four review is conducted to determine the claimant's ability to perform relevant work that he has done in the past (20 C.F.R. § 404.1565 and 20 C.F.R. § 416.965), and step five review concerns the claimant's ability to perform any other jobs in the national economy, giving consideration to his age, education, work experience, and residual functional capacity.  (20 C.F.R. § 404.1569 and 20 C.F.R. § 416.969.)  Here, the ALJ concluded at step four that Plaintiff was not able to perform relevant past work as a freezer assembler or cook (Tr. 20), but at

step five there were jobs existing in significant numbers in the national economy that he could have performed, and therefore he was not disabled.  (Tr. 20-21). Plaintiff contends that the ALJ erred at step five by failing to give controlling weight to the RFC opinion of Plaintiff's treating physician, Dr. Lofgren, and therefore, the vocational expert provided an opinion on employment based on a hypothetical that inadequately identified all of Plaintiff's impairments and limitations.

## DISCUSSION

## I.    Standard of Review

### A.    Definition of Disability

Congress has prescribed the standards by which Social Security disability benefits may be awarded.  "Disability" under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A).

The claimant bears the burden of proving his or her entitlement to disability benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Once the claimant has demonstrated that he or she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second, that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

## B.   Substantial Evidence on the Record as a Whole

This Court's review of the Commissioner's decision to deny disability benefits to a claimant is limited to a determination of whether the decision of the Commissioner is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006).  "There is a notable difference between 'substantial evidence' and 'substantial evidence on the record as a whole.'"  *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reed v. Sullivan*, 988 F.2d 812, 814 (8th Cir. 1993) (internal quotation marks omitted); *see also Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (quoting *Beckely v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998).)  "Substantial evidence on the record as a whole,' . . . requires a more scrutinizing analysis."  *Gavin*, 811 F.2d at 1199.

9

"The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Id.* (quoting *Parsons v. Heckler*, 739 F.2d 1334, 1339 (8th Cir. 1984)).  In reviewing the administrative decision, "the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

In reviewing the record for substantial evidence, the Court may not substitute its own opinion for that of the ALJ.  *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).  The Court may not reverse the Commissioner's decision merely because evidence may exist to support the opposite conclusion.  *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994); *see also Woolf*, 3 F.3d at 1213 (concluding that the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding).  The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence.  *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted).

## C.    Source of Medical Opinion Evidence

When determining if a claimant is disabled, "the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record."  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b)).  Medical opinions are statements from acceptable medical sources "that reflect

judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).  Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed podiatrists and qualified speech-language pathologists. 20 C.F.R. § 416.913(a)(1–5) (noting sources from whom evidence to establish an impairment will be accepted).

## II.   Listings Equivalent

Plaintiff contends that the ALJ failed to fully develop the record as to whether his impairments, considered in combination, were medically equivalent to the criteria needed to meet a listed impairment.  Specifically, Plaintiff asserts that "[w]hen the limiting effects of [his] diabetes, obesity and carpal tunnel syndrome and leg ulcers are also considered, [his] impairments 'are at least of equal medical significance to' the criteria contained in Section 1.02 of the Listings of Impairments."  (Pl. Mem. at 11; (Doc. No. 18).)  Plaintiff acknowledges that he cannot point to any medical evidence to support this position, but argues that evidence of medical equivalency is not in the record because the ALJ failed to meet her obligation to fully and fairly develop the record, and the matter should be remanded to obtain such an opinion on medical equivalency.

Listings Section 1.02 establishes a disability category based upon major dysfunction of a joint(s) characterized by gross anatomical deformity with "[i]nvolvement of a major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle),

resulting in inability to ambulate effectively, . . ."  20 C.F.R. Part 404, Subpart P,

Appendix 1, 1.02.  This listing anticipates inability to walk without assistance,

inability to perform routine ambulatory routines such as shopping or banking, *Id.*,

1.00(B)(2)(b)(1) and (2) (relating to lower extremities), or inability to prepare a

simple meal, feed oneself, and tend to personal hygiene.  *Id.* 1.00(B)(2)(c)

(relating to upper extremities).   An impairment is medically equivalent to a listed

impairment if it is at least equal in severity and duration to the criteria of an

Appendix I impairment.  (20 C.F.R. § 404.1526(a) and 20 C.F.R. § 416.926(a).)

"Medical equivalence must be based on medical findings."  *Johnson v. Barnhart*,

390 F.3d 1067, 1070 (8th Cir. 2004).

Plaintiff correctly places an onus on the ALJ to fully and fairly develop the

record.  He further contends that, in order to comply with the obligation to

develop the record, it was incumbent on the ALJ to consult with a medical expert

as to whether a listings equivalency was present.  (*See*  SSR 96-6p (Pl. Mem. at

12-13).)  However, in asserting his equivalence argument Plaintiff has relied

entirely on a somewhat contradictory argument that places a burden of soliciting

or producing opinion evidence on the ALJ, while wholly ignoring the requirement

that the claimant put forth "medical findings equal in severity to *all* the criteria for

the one most similar listed impairment."  *Marciniak v. Shalala*, 49 F.3d 1350,

1354 (8th Cir. 1995) (emphasis in original).  *See*  20 C.F.R. § 404.1526(a).

In advocating for a medical consultant opinion on the listing, Plaintiff offers

no particulars in the way of medical evidence that he believes should have

prompted the ALJ to seek such an opinion.  In her decision, the ALJ discussed

each of the severe impairments as a potential basis for a finding that Plaintiff met

a listing.  (Tr. 15-16.)  The ALJ paid particular attention to the criteria for meeting

a Section 1.02 listing for major dysfunction of a joint, but found that the evidence

did not demonstrate that the claimant experienced the necessary degree of

difficulty in ambulating.  In that regard, Sections 1.00(B)(2)(b)(1) and (2) describe

inability to ambulate as an extreme limitation on the ability to walk without a

hand-held assistive device(s), such as a walker, two crutches, or two canes.

Plaintiff's possible Section 1.02 impairments referenced in the record in

this matter are degenerative joint disease of the right knee that was found to be a

severe impairment by the ALJ; and bilateral carpal tunnel syndrome which was

alleged but not diagnosed or treated as evidenced in the pertinent medical

records.  On review of the medical records in this case this Court likewise finds

no objective evidence that Plaintiff required a walker, multiple canes, or any other

equipment or device to assist him in walking, and there is no evidence in the

record to demonstrate any significant inability to perform either fine or gross

movements due to carpal tunnel syndrome.  To the contrary, Plaintiff stated in a

Function Report dated June 11, 2011, that even though his right knee and lower

back would get sore from standing, and he sometimes experienced leg cramps

and hand and arm numbness, he was able to use the computer, do laundry, cook

meals, play cards, walk four-to-five blocks, help with dishes, and mow his lawn in

stages.  (Tr. 146-48.)  In June 2011, Plaintiff reported that he wore knee braces

when standing for a long period of time, but did not use a cane (Tr. 152), though

in a Social Security Orthopedic Examination conducted by a consulting

physician, Dr. D.M. Van Norstrand, on August 15, 2011 (Tr. 328-33), Plaintiff

indicated that he used a cane for a combination of his right knee and low back

problem.  (Tr. 329.)  Plaintiff certainly reported some limitations in his functioning,

particularly in comparison to his prior levels of functioning ability, but his

limitations do not approach the substantial difficulties in ambulation that would be

needed to meet the Section 1.02 listing, whether based upon Plaintiff's

degenerative disease of the right knee or in combination with any of his other

physical impairments.

Consultation with a medical expert would not have been useful to the ALJ

in determining whether Plaintiff's combination of conditions was medically

equivalent to a listing, and such consultation was not required given the paucity

of either objective or subjective evidence that would even arguably support an

opinion that a listing was met, directly or by equivalency.   In considering various

alternative listings the ALJ expressly determined that the overall evidence did not

support a listing finding for degenerative lumbar impairment under Section 1.04.

(Tr. 16.)  Plaintiff does not point to any objective evidence in the medical record

that a consulting expert could rely on to form an opinion on Section 1.04 listing

equivalency.  With regard to the serious impairment from peripheral venous

insufficiency[4] which was the apparent underlying cause of Plaintiff's leg

---

[4]      Venous insufficiency is a condition in which the veins have problems

ulcerations, the ALJ found that there was no pertinent evidence to establish the severity of symptoms and therefore the impairment simply did not meet the criteria for listing 4.11.  (*Id.*)   Moreover, by August 2010, the leg ulcerations appear to have substantially healed with treatment.  (Tr. 226-29.)  The ALJ found that Plaintiff did not meet a listing for diabetes because the record did not show evidence of complications such as seizures or loss of consciousness that establish a Section 11.00 listing for neurological conditions, or altered mental status and cognitive deficits that might establish a Section 12.00 listing for mental disorders arising out of diabetes.  (Tr. 16.)  Finally, the ALJ noted that there is no listing for obesity, but that the functional effects of obesity are properly evaluated in combination with other impairments, and she accordingly considered this impairment in the context of the overall record.  (*Id.*)

As previously noted, Plaintiff contends that the limiting effects of his diabetes, obesity, carpal tunnel syndrome, and leg ulcers, in combination with impairments relating to degenerative joint disease of the right knee, and lumbar degeneration, are medically equivalent to the criteria Section 1.02 listing, and the necessary evidence of equivalency would have been in the record had the ALJ consulted with a medical expert.  The conclusion is speculative at best because the record in this case simply does not contain evidence showing that Plaintiff's functioning was limited to a degree necessary to meet the Section 1.02 listing

---

sending blood from the legs back to the heart, *i.e.* poor circulation.  Symptoms include aching and cramping, varicose veins, and ulcers or slow healing wounds on the legs or ankles.  Medline Plus Medical Encyclopedia, January 29, 2015.

criteria, or any other listings criteria.  Rather, the record shows a degree of functioning that precludes determination that he met the listing, either independently or as a combination of all of Plaintiff's impairments and limitations, and a contrary determination by a consulting medical expert would not have carried significant, if any, weight.  Plaintiff reported in a June 2011 Function Report that his usual activities included going online to look for work, washing the dishes, doing laundry, walking four or five blocks, making dinner, grocery shopping, and mowing the lawn.  (Tr. 146-19.)   He was a trained chef and made many meals from scratch.  (Tr. 148.)  He did some home repairs, visited family members, and played indoor games with his children.  (Tr. 150.)  While indicating that many functioning abilities, including lifting, postural, and movement abilities were adversely affected by his conditions, those functioning limitations did not impede his ability to ambulate to the degree necessary to meet a listing. Plaintiff's motion for remand to obtain the opinion of a medical expert as to listing equivalency should be denied.

## III.    Residual Functional Capacity and Vocational Findings

### A.    RFC Hypothetical

As indicated previously, the ALJ's consideration of the vocational factors at Steps Four and Five in the disability evaluation process entails a determination of the claimant's RFC to do work.  Based on her consideration of the record in this case, including treating and consulting medical sources, as well as functioning

---

www.nlm.nih.gov/medlineplus/ency/article/00203.htm.

reports which reference specific limitations and capabilities (Tr. 16-20), the ALJ found that Plaintiff had the RFC "to perform light work . . . except occasional climbing of ramps and stairs, no climbing ladders, ropes or scaffolds, occasional balancing, stooping, kneeling, and crouching, no crawling, and no work with unprotected heights and hazardous machinery." (Tr. 16.)  The ALJ incorporated this RFC into a hypothetical that had previously been presented to a vocational expert, by way of interrogatory, for an opinion as to whether there were jobs in the national economy the Plaintiff could perform, in light of his age and education. (Tr. 194-195.)  The vocational expert opined that the claimant could perform his past work as a short order cook, and could also do other work as a cashier, cleaner, and small products assembler. (Tr. 195.)   But after review of Plaintiff's work history report and his earnings record, the ALJ concluded that Plaintiff could not do past relevant work, but that he could perform other work that existed in the national economy as indicated by the vocational expert. (T. 21.) Therefore, Plaintiff was not disabled.

### B.    Evidence of Functioning Limitations

In evaluating Plaintiff's RFC the ALJ considered whether Plaintiff's underlying physical impairment could be expected to produce the reported pain and symptoms, and if so, the extent to which those symptoms limited Plaintiff's ability to function. (Tr. 16-17.)  In a function report prepared in June 2011, Plaintiff alleged that his ability to lift was limited to 25 pounds; his knee gives out if he squats; bending hurt his back; standing caused his legs to swell and

develop sores; reaching hurt his shoulders; walking caused his knees and legs to hurt; sitting caused his legs to stiffen up; he could not kneel; climbing stairs hurt his knees; completing tasks caused soreness in his legs, shoulders, and arms; and he experienced numbness in his hands.  (Tr. 146, 151.)  He could walk up to four blocks before needing to rest (Tr. 151) and could stand for up to an hour in one place.  (Tr. 146-47.)  He was able to assist with household and yard chores such as preparing meals, washing dishes, laundry, and lawn mowing, though with time limitations and periodic breaks needed.  (Tr. 148.)  He was able to play cards and go shopping.  (Tr. 150.)

The ALJ found that Plaintiff's medically determinable impairments of diabetes, obesity, degenerative joint disease in the right knee, lumbar degenerative changes, and peripheral venous insufficiency could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptom were not credible to extent they were inconsistent with objective medical evidence and other evidence.[5]  (Tr. 17.)  As to the diabetes diagnoses in February 2011, by November 2011, Plaintiff was exercising, though somewhat less, his glucose levels were within goal range, he had no recent hypoglycemic episodes, he was feeling much better and had improved energy, and his vision was good.  (Tr. 18, 357.)  Plaintiff does not point to any symptom or functional limitation relating to

---

[5]     Plaintiff did not challenge the ALJ's credibility determination and did not direct the court to objective medical evidence in the record to support his own statements as to his functional limitations.

18

diabetes that the ALJ failed to take into consideration in determining his RFC. The ALJ next discussed Plaintiff's peripheral venous insufficiency which had caused edema in his lower legs, and found no indication that Plaintiff needed restrictions, such as keeping his legs raised. (Tr.18.)  Again, Plaintiff does not point to any error in the ALJ's evaluation.

Plaintiff's sole argument on appeal as to the RFC findings is in regards to the ALJ's failure to give significant weight to a treating physician opinion on lifting and standing limitations that arise largely out of Plaintiff's degenerative joint disease of the right knee.  The ALJ noted that Plaintiff had received a steroid injection in January 2011, and had experienced some sustained relief from previous injections. (Tr. 243.)   Functional limitations relating to the knee impairment were taken into account in the RFC limitation to light work, with specified climbing and movement restrictions.  The ALJ expressly stated that little weight was given to the treating physician's opinion for reasons discussed below. (Tr. 18.)

As to Plaintiff's most recent employment history, in March 2012 he was working at Goodwill in a re-training program in which his duties included furniture assembly and cleaning wheelchairs. (Tr. 400.)  In an April 18, 2012 report, Plaintiff's Goodwill case manager stated that Plaintiff had been present on all scheduled work days and had not had any absences. (Tr. 403.)  He had worked two days of the week in the equipment loan department and three days a week in the warehouse. (Tr. 404.)  The case manager recommended that Plaintiff

continue in the work program to maintain and improve his work skills and stated, "[a]t this time[,] Roger appears to have the work skills that could indicate employability in the community." (Tr. 405.)   Plaintiff's re-training records weigh against a finding of disability.

### C.    Treating Physician's Opinion

Based on a postmortem opinion letter sent to Plaintiff's counsel from his treating physician, Dr. Lofgren, Plaintiff contends that the ALJ's determination on RFC and the vocational hypothetical were not based on substantial evidence in the record.   Plaintiff argues that the opinion of the treating physician as to RFC is entitled to controlling weight.   20 C.F.R. § 404.1527(c)(2), 20 C.F.R. § 416.927(c)(2).   Dr. Lofgren's letter (Tr. 410) states that he had been Plaintiff's physician for more than 20 years, and based on examination and treatment since December 15, 2010, Plaintiff was restricted to lifting 10 pounds occasionally, *i.e.* a sedentary exertional level; and because of his medical condition, he was restricted to standing for two hours or less, of an eight-hour day.   (*Id.*)   Plaintiff asserts that the ALJ erred in failing to include Dr. Lofgren's limitations in the vocational hypothetical.

A treating provider's opinion is typically entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory and diagnostic techniques" and not inconsistent with other substantial evidence in the record. *Pirtle v. Astrue*, 479 F.2d 931, 933 (8th Cir. 2007) (quoting *Prosch v Apfel*, 201 F.3d 1010, 1012–13 (8th Cir. 2000)).   "An ALJ may discount such an opinion if

other medical assessments are supported by superior medical evidence, or if the treating [provider] has offered inconsistent opinions." *Holmstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001).  If the treating provider's opinion is not given controlling weight, the ALJ should consider the following factors: length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability of opinion, consistency of the opinion with the record as a whole, specialization, or any other factors that support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2), 20 C.F.R. § 416.927(c)(2).

A review of office visit notes by Dr. Lofgren, and other treating physicians, reveals no instances in which 10-pound lifting and two-hours standing restrictions were medically recommended, whether with respect to outpatient leg edema treatment by physical therapists from January 2010 through August 2010 (Tr. 213-239); treatment for degenerative joint disease in his right knee by Dr. Lofgren in January and February 2011 (Tr. 240-43, 266-70); or treatment by Dr. Lofgren for diabetes from February 2011 to November 2011 (Tr. 244-64, 344-61.) In November 2011, Dr. Lofgren indicated that Plaintiff's glucose levels were all within the goal range and he had not had any hypoglycemic episodes.  Plaintiff was feeling much better and had improved energy.  (Tr. 357.)  On March 21, 2012, one month before Plaintiff's death, Dr. Lofgren stated that Plaintiff's weight was down 41 pounds, he was watching his diet, and his exercise level was up. (Tr. 361-62.)  Plaintiff had venous dermatitis, but after his weight loss, he had no leg edema (Tr. 362), and Dr. Lofgren saw no cardiac abnormalities.  (Tr. 363.)

The ALJ gave little weight to Dr. Lofgren's letter opinion because it was not supported by the physician's own treatment notes, no limitations were indicated contemporary to any medical visit, and the opinion was inconsistent with Plaintiff's reported activities from February 2012 through April 2012.  (Tr. 18.)  Also, Dr. Lofgren had stated in a January 2011 treatment note (Tr. 240) that Plaintiff wanted to be certified as disabled because he had lost his job and was not able to get unemployment benefits.  (Tr. 18.)  Dr. Lofgren declined to provide such certification, opting instead to advise Plaintiff as to the Social Security disability process.  (*Id.*)  The ALJ's evaluation and assignment of weight regarding the opinion is supported by the substantial evidence on the record as a whole, and the decision to give little weight to Dr. Lofgren's opinion for purposes of determining Plaintiff's RFC was not error.  Plaintiff's motion to remand with instructions that the ALJ obtain a vocational expert opinion based on a hypothetical that incorporates limitations as indicated in Dr. Lofgren's opinion letter dated August 2, 2012 (Tr. 410) should be denied.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 17) be **DENIED**;

2. Defendant's Motion for Summary Judgment (Doc. No. 19) be **GRANTED**; and

3. This case be **DISMISSED WITH PREJUDICE**.

Date: February 9, 2015

                              _s/*Jeffrey J. Keyes*_____
                              JEFFREY J. KEYES
                              United States Magistrate Judge


        Under Local Rule 72.2(b) any party may object to this Report and
Recommendation by filing with the Clerk of Court, and serving all parties by
**February 24 , 2015**, a writing which specifically identifies those portions of this
Report to which objections are made and the basis of those objections.  Failure
to comply with this procedure may operate as a forfeiture of the objecting party's
right to seek review in the Court of Appeals.  A party may respond to the
objecting party's brief within fourteen days after service thereof.  All briefs filed
under this rule shall be limited to 3500 words.  A judge shall make a de novo
determination of those portions of the Report to which objection is made.  This
Report and Recommendation does not constitute an order or judgment of the
District Court, and it is therefore not appealable directly to the Circuit Court of
Appeals.